Filed 3/25/13  Ashley C. v. Super. Ct. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ASHLEY C., <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF ORANGE COUNTY, <br><br> Respondent; <br><br> ORANGE COUNTY SOCIAL SERVICES AGENCY et al., <br><br> Real Parties in Interest. | G047931 <br><br> (Super. Ct. No. DP-023119) <br><br> O P I N I O N |

Original proceedings; petition for a writ of mandate/prohibition to challenge an order of the Superior Court of Orange County, Richard Y. Lee, Judge. Petition denied.

Juvenile Defenders and Christine Marcos for Petitioner.

No appearance for Respondent.

Nicholas S. Chrisos, County Counsel, Karen L. Christensen and Aurelio Torre, Deputy County Counsel, for Real Party in Interest Orange County Social Services Agency.

*          *          *

M.L. was born in October 2012. Her mother, petitioner Ashley C., had taken methamphetamine the day before, so M.L. was born with methamphetamine in her system. Two days after her birth, M.L. was detained by the Orange County Social Services Agency, and by October 10 the agency had filed a petition to declare M.L. a dependent of the juvenile court.

Coincidentally, October 10, 2012 was also the day scheduled for the termination of Ashley's parental rights in her two previous children, O.P., then age 8, and S.L., then age 2, pursuant to section 366.26 of the Welfare and Institutions Code.[1] The juvenile court had already terminated reunification services for Ashley vis-à-vis both kids the previous June. While termination apparently did not actually occur on October 10, we may take judicial notice that Ashley's parental rights to at least S.L, and evidently to O.P. also, were subsequently terminated.[2]

A detention hearing concerning M.L. was held the next day, October 11. The court ordered Ashley receive no visitation until she cleared certain warrants, apparently related to driving while intoxicated and driving with a suspended license. Upon clearing the warrants, however, she was to have monitored visitation with M.L., two times a week, for two hours per visit.

On October 26, M.L. was placed with the father's cousin as caretaker.

By early November Ashley's warrants had not been resolved, i.e., she had no visitation. However, sometime between early November 2012 and January 2, 2013,

---

[1] All statutory references in this opinion are to that code.

[2] On January 22, 2013, S.L.'s father filed a notice of appeal contesting the termination of his parental rights to S.L. in an order made January 8, 2013 (appellate case number G047936). In the absence of any evidence to the contrary, we presume Ashley's rights to O.P., whose father is now deceased, were also terminated.

2

the warrants were sufficiently cleared that Ashley had begun visitation with M.L. at the father's mother's house.

Ashley didn't have visitation for more than two months before she proved uncooperative with the caretaker. On the first Saturday in January 2013, Ashley became "belligerent" when the caretaker became ill and couldn't travel to the father's mother's house for visitation. Ashley demanded visitation be provided despite the illness. When the caretaker offered to allow the visit in her own home, Ashley refused, insisting the visit occur at the father's mother's house as usual.

The same thing happened the next day. The caretaker was still ill and could not provide a visit at the usual place. She pointed out that only *she* was authorized to monitor the visits, so simply dropping off the child at the father's mother's house was not an option. Ashley countered by becoming "argumentative and erratic." Apparently Ashley's demeanor was so obnoxious that the caretaker then requested future visitation occur in social workers' offices in Orange County.

It is not surprising, then, that at a dispositional hearing held January 8, 2013, the court adopted a case plan proposed by social workers which restricted Ashley to once-monthly monitored visits of two hours. Ashley did not attend that hearing,[3] and her attorney made no challenge to either the case plan or the ultimate visitation order embodied in the case plan.

Also at the January 8 dispositional hearing, the court further found there was no need for any reunification services *at all*, citing section 361.5, subdivision (b)(10). That statute provides no reunification services need be offered when reunification services for siblings have been terminated because the parent has not made a reasonable effort to treat the problem that led to the removal in the first place.[4] Ashley

---

[3] Her own mother, however, showed up and at one point inquired about visitation for herself.

[4] Here is the relevant text:
"(b) Reunification services need not be provided to a parent or guardian described in this subdivision when the court finds, by clear and convincing evidence, any of the following:

does not now contest the application of section 361.5, subdivision (b)(10) to her case, and in any event its applicability is amply demonstrated by the fact her drug and alcohol problems remained unresolved by the time of the birth of M.L. in October 2012.

Rather, Ashley has brought this petition for a writ of mandate challenging the effective reduction of visitation embodied in the order of January 8, 2013 from two hours two times a week to two hours once a month. Her argument is that there was some error (abuse of discretion, really) because there was no showing that her visits were detrimental to M.L.

Her argument fails. First, Ashley waived the visitation issue by not contesting it at all at the January 8, 2013 hearing, and she presents no legal argument that might be a ground for this court to exercise its discretion to excuse the waiver. Indeed, to so exercise our discretion would jeopardize M.L.'s need for permanence and stability at this stage of the proceedings. (See *In re S.B.* (2004) 32 Cal.4th 1287, 1293 ["But the appellate court's discretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue. . . . Although an appellate court's discretion to consider forfeited claims extends to dependency cases . . . , the discretion must be exercised with special care in such matters. . . . Because these proceedings involve the well-being of children, considerations such as permanency and stability are of paramount importance."].)

And second, even if we were to reach the merits, the record easily shows the juvenile court acted reasonably in reducing Ashley's visitation time. There *was* a showing visitation would be detrimental to M.L. Ashley's belligerence and lack of cooperation in the first week of January revealed the potential for Ashley to scare off

---

". . . .

"(10) That the court ordered termination of reunification services for any siblings or half siblings of the child because the parent or guardian failed to reunify with the sibling or half sibling after the sibling or half sibling had been removed from that parent or guardian pursuant to Section 361 and that parent or guardian is the same parent or guardian described in subdivision (a) and that, according to the findings of the court, this parent or guardian has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from that parent or guardian."

4

M.L.'s caretaker and thereby undermine whatever permanence and stability had already been established in M.L.'s young life.

The petition is denied.


BEDSWORTH, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


THOMPSON, J.